Good morning. May it please the Court, I'm Mike McCulloch, Counsel for Parker Hallam in this case. Your Honors, this case presents another instance of agency overreach. Here the SEC making up remedies that are not authorized by Congress. This whole case is basically about Lew v. SEC, where the central holding was that the special purpose equity power in 15 U.S.C. Section 78U.D.5, which I'll abbreviate throughout as just 78U, contains the limitations upon its availability that prefusion equity typically imposes. The District of Columbia, which is the only state in the United States, has a government organ exception to the rules of prefusion equity, which also flouts Lew, and rejected outright the case law cited by the Supreme Court as controlling. During your discussion, I don't mean to interrupt your train of thought, but I hope you and opposing counsel both will address the statutory amendments post-Lew, and whether those are only a codification of Lew, or whether they make a difference here that we should consider, and also whether maybe we need some supplemental briefing on those. Anyway, again, I don't mean to interrupt your train of thought, but work that into your discussion, please. Well, that will be sort of hanging over all this, so I should probably just address it right now, since Your Honors asked about it, and that's obviously a very good and cogent question to ask here. So, as part of the Defense Authorization Act, sort of a midnight amendment was placed in that looks like it was very hurriedly drafted. It just listed a number of remedies that the SEC is entitled to get going forward in federal court actions, as opposed to administrative proceedings. That is not . . . I don't think that's of concern to this Court in this case, for several reasons. One is, that was not decided by the Court below. It was not invoked by the SEC in the Court below. It was not argued. It's not been presented in this Court. If those were, in fact, if those amendments were applicable here, the Court would need to remand for the district court at the first instance to decide whether or not those apply and whether or not they would change the result here. To be very direct about Your Honors' question, they're not a codification of blunt instruments. It's still not clear what those things mean. For example, it just uses the word disgorgement. What does that mean? So, it's not really helpful to this Court, but since that was not an issue, also whether or not you can retroactively apply remedies that were not available at the time that the case was filed and the time that the consent agreement was entered into in which liability was resolved, leaving only remedies left. You have what's initially a contract where the parties are agreeing, here are available remedies. We'll settle on liability, which the vast majority of defendants do, rather than go through years of litigation. And then, those are the remedies that are available. Number one, Lew took some of those remedies away, which is what we're here about. If Congress added to those remedies, that undermines, actually just destroys as a failure of consideration on the contract. And so, the initial consent decree, the agreed partial judgment in the thing, that's why we're here today, was all based on the old law, not the new law, if that makes sense to Your Honor. So, we can't apply what Congress said, the newer pronouncements of Congress, to your client's situation? Correct, Your Honor. It may apply to . . . it arguably does apply to all cases going forward, but we entered into an agreement at a time when the law was X, the law is now Y, arguably under the Defense Authorization Act. So . . . Would we create a circuit split by holding that there has to be a res for a disgorgement? Very much so. And would it be going forward, because if Congress just generally referred to disgorgement, is it a big deal to create this circuit split, or is yours a unique unicorn because of the consent . . . you see what I'm saying? Does it . . . would it apply going forward, or would it only apply to the ones that are not covered by Congress's latest pronouncements? Do you get my question? I get your question, and I think the answer is probably unknowable at this point, because no one has yet construed the Defense Authorization Act. Interestingly, the . . . for reasons unknown to us, the SEC, which has been successfully arguing this issue in several other circuits, has not invoked the Defense Authorization Act the way that Your Honors asked the question here. And maybe it's out of recognition that the old cases, which have been settled, at least half settled, on the liability issue based on the party's understanding that here are the remedies out here that are going to be available, that we're going to contest and litigate going forward, that those are all different. So we might not have . . . we settled this and knew there was no res at the time. We're already making this argument to the district court, and so if the Defense Authorization Act means you can disgorge without a res, who knows what it means? It's just the word disgorgement, if you go by the dictionary definition, if you look at Oxford, Merriam-Webster, they all say it's to disgorge something. And it's sometimes to disgorge in a . . . It has to be some tangible being held. It has to be some . . . It's your argument. It doesn't make any sense to . . . restitution is one thing. Disgorgement is something . . . you disgorge a thing under a dictionary definition. And without any legislative history, there for these Defense Authorization Act amendments, without any legislative history, you've got to go by a dictionary definition. So I think we're back to where we're arguing the law is and has to be, and what it's been for hundreds of years, is that in equity, you get restitution type remedies, in this case called disgorgement, only if there's an identified res. What exactly do you want us to do? We want this court to hold that in the absence of an identified res, the court was unable to . . . was unauthorized to impose disgorgement. And there are a number of reasons why, besides just the lack of a res. And so . . . and remand to see if there is a res or just told there was no res and therefore no disgorgement? There was no res and therefore there's no disgorgement. The parties have litigated up to now. If we're going to say there's a new law out there, there's a new statute, send it back and we're going to start all over again. I think it would require us to literally go back to square one in this case. Again, we settled knowing there was no res and therefore we believe there could be no disgorgement. If in fact the Defense Authorization Act changes that, which presumably if you were going to remand it, you would assume that it might, then we probably would go back and ask that we just start over from scratch, square one, no settlement, we'll just litigate the case. Counsel, when your client signed the consent that says, quote, defendant agrees that the court shall order disgorgement of ill-gotten gains, and that's at 981 of the record on appeal, what did that mean? That meant that under the law as it existed at that time in this circuit and every other circuit, that disgorgement was a permissible remedy as was prejudgment interest, as was all of these other things that are unauthorized. But the theory is that by saying, I agree that the court shall order disgorgement of ill-gotten gains, what I really mean is that the court cannot order disgorgement of anything? Cannot order, well, Your Honor, the law that we've included in our briefing that says that the court cannot enforce a consent decree that has become undermined by subsequent material changes in the law. So if it's based on, if a remedy is in a consent decree, that remedy's been either significantly undermined or overruled by a Supreme Court case, that consent decree cannot be enforced, and that's what we're arguing. You presumably see now how this argument folds back on itself, right? Because in 2017, you say, defendant agrees that the court shall order disgorgement of ill-gotten gains. Then you say, well, now we have Lew, so we should get the benefit of Lew. And then, as Judge Smith points out, Congress comes in with the NDAA, and you say, well, that doesn't matter. So the law changes once, and that's good for you, but then the law changes a second time, and that perhaps is not good for you. So you either need to have a subsequent law post-2017 or not, but I don't think you get to pick and choose which one you like or don't. Well, we think we do get to pick and choose Lew, because Lew is the law of the land, and we believe Lew says what we say it says and what the Supreme Court said it says, and which does not allow the parties to, in one of the cases it articulates, that the parties cannot purchase from the court, by their own elaborate settlement, a remedy that is not allowed under the law, that is not authorized by Congress. Yeah, I'm intrigued by that. So suppose, let's strip out all of the complexities of post-2017 legal development, and let's just imagine that the parties enter into a consent agreement and say the court, pursuant to this agreement, can do X and Y and Z. Does it matter if the statutes are contrary? I mean, if the defendant is consented to these sorts of remedies, normally you're allowed to forego your rights to complain about stuff. Correct. You can agree to just about anything. That's general rule. But, if it's a government enforcement mechanism, if it's a government statutory scheme, the Supreme Court's been very clear, and clearer and clearer as the last few years have gone by, that if a remedy is not expressly authorized by Congress, it doesn't exist. And that makes sense to me in Lew, right, because there's no consent agreement in Lew, and I recognize that the SEC gets these consent agreements on a whole lot of their cases in the district court, and that's a whole other conversation about the consequences of that. But, in a case where the defendant says, I mean, this agreement says, voluntarily, freely, no promises, I promise, I really mean this, I mean, no promises from the government, but I, the defendant, promise I really mean it, it does seem a little odd to then come in and say, well, my consent is illusory. I wasn't actually telling the district court it could do anything because it turns out that I want the benefit of stuff that happened three years later in statutory changes. Correct. But, again, you run into the hard and fast rule that the parties can't create power for a federal court that otherwise doesn't exist, and that's effectively what we would be doing. So we think it's not so much a matter of picking and choosing, it's a matter of Lew changed the law, that's the law now, that does undermine the agreement. The other option would have been to file Rule 54B or Rule 60 motions. We invoke those rules in our response, but not as a separate motion. I think they take us to task for that as if that formality really makes any difference. We could have just blown up the whole agreement. I don't think either side really, really wanted to do that, but here, we can't, the parties can't make up a remedy, even if it looked like it existed. What Lew said was it really never was the authority. Why can't you, by agreement, do something that's not what they would be entitled to? Why isn't that allowed? If you agreed to it, and you're sophisticated, so it's not a situation where it's grossly unfair or something, why can't you agree to it? You can agree to a lot of things, but you cannot agree to create a remedy in a statutory enforcement scheme that Congress has enacted that doesn't exist. You can't do that. And so, in nearly every other circumstance, when you settle a case, you can agree to stand on your head on the roof of the courthouse. But not here, because you can't, for example, you couldn't agree that the court in the SEC civil enforcement action will impose a sentence of a year in the custody of the Attorney General. You can't agree to that, because that's not an authorized remedy under the law. These remedies that we're complaining about here, pre-judgment interest, the conduct-based injunction prohibiting Hallam from ever engaging in certain legal commercial activity in the future, nowhere in the statute. Well, haven't we done that in the BP litigation, where we, by agreement, the parties arranged that we would hear appeals, but the district court doesn't have to hear appeals. You may not be familiar with this, so this may not be a good example. But, basically, by agreement, we end up hearing appeals that we wouldn't otherwise hear, because the district court doesn't have to hear. So, why can't we, why can't the parties, as long as everyone goes along with it, agree to things that the court can't ordinarily give in the abstract? Again, Your Honor. What case says that? We cited the cases in our brief that provide that courts cannot enforce consent decrees, consent agreements, settlement agreements that have been undermined by subsequent legal changes, and especially in the case of a statutory enforcement scheme, the parties cannot make up remedies that the court is going to impose, because that consent decree becomes . . . Can I ask one more, just my other question is, did you, so, did you ask to blow it up and the district court said, I mean, the court said no, or did you not really ask to blow it up? We did not ask to blow the whole case up, to blow the whole agreement up. But you're saying that now, today, as a possible . . . We decided not to do that, but we think it's the same thing to just go forward not enforcing the now illegal remedies in the wake of Lew. It's more efficient, saves judicial resources, saves party and lawyer resources to do it that way. I see that the red light's on and I didn't get to most of my arguments. Well, if you, if you would like to have one more minute, if you're going to raise something new, then of course I'll give opposing counsel the same privilege, but only in one minute. Okay, I can, I'll take one, I'll take one minute. I want to focus particularly, two things that I'll try to, 30 seconds each. One is the city of Elizabeth case on the issue of what constitutes net profits. This idea of personal net profits of Hallam doesn't make any sense whatsoever. It's irrational. If you read city of Elizabeth, cited in Lew, relied on in Lew, explained in Lew, where the guy did this paving contract for the city using a purloined patent process and knowingly he gets caught after the contract's done. The patent holder sues and in equity and the court, Supreme Court held and ratified this in Lew that the, the individual, a guy named Tubbs, even though he's a wrongdoer, he could be sued for damages, but he couldn't be sued in equity for restitution, which the equivalent here of, of disgorgement because he didn't get the money. The money went into the company coffers. It's the exact same thing. Lew, Elizabeth, city of Elizabeth is directly on point. The trial courts only . . . And then what was your, what was the last point you were going to make? And the last point is on the hearing, the Smith case and the team resources case from this, from this circuit. We, one of the reasons for the court's ruling on, on penalty and disgorgement on the amounts was the lack of sufficient evidence by the defendant where the, the burden was put on the defendant wrongfully, a heavy burden, to prove a negative. There's lots of money that according to the record he didn't get, but the judge didn't find that evidence persuasive enough. All right. That's what hearings are for. We requested a hearing timely. We believe the law is . . . Thank you, Mr. McCulley. And you say time for rebuttal. Thank you. Thank you. All right. You can tell me whether it's Wieman or Wieman because I don't know, so . . . Thank you, Your Honor. It's Wieman. Wieman. May it please the Court. Theodore Wieman for the Securities and Exchange Commission. Thank you. I'll start, Your Honor, with the NDAA, which Your Honor requested that, that we address. Our position here, of course the NDAA is, governs the, the, the securities laws. It's a, it's a, it's an amendment to the statute. Our position here is that it simply doesn't, doesn't change the nature of the relief that's available. It codifies the authority of courts to award disgorgement and commission actions. And to the extent it allows different, you know, terms under which in some circumstances it might be awarded. This is sort of the bare minimum of what Lew, Lew recognizes is available, is preserved under the NDAA. And in this case doesn't present . . . What if we think you need to put it away? What if we think you, that you need a res after Lew? And so then what happens? Well, Your Honor, if, if, if there is, if this Court does decide that a res, res is necessary, it would certainly change the nature of disgorgement that's available. But you don't think the Congress's actions change that at all? It would still be the same analysis? Well, as Judge Smith said, supplemental briefing would certainly, we'd be willing to do to assist the Court if that were the direction we're going. I think there, there could be arguments that the, the amendments provide extra language that would mitigate that argument. But you said just at the very beginning that it didn't affect it. It doesn't, it, the, it, it preserves what's available under Lew. It doesn't, in, under the circumstances of this case, no res is required. And does Lew subtract from Lew? It, if it does anything, it would, it would add to Lew. It would provide additional terms. It provides that disgorgement's available for unjust enrichment. It, it, it, it explicitly ties it to the unjust gain. I believe it has different language concerning the, for the benefit of investors. And, and I believe this issue or some of these issues are being briefed in the Blackburn case in this Court. So there are circumstances under which the NDA amendments potentially expand upon what's available in a commission enforcement action. This is not, our position is not necessary here because under Lew, no res, there's no change to the well-established law that there's no tracing, no res requirement in disgorgement actions, in claims for disgorgement in commission actions. So there's no need to go beyond it. But again, to the extent that this were something that the, the Court were interested in, we'd be happy to provide additional briefing. Can you address individual investors not being there to get the disgorgement? Under the NDA amendments? I, I believe the language simply says that disgorgement is available for money received by the defendant for unjust enrichment. I'm sorry, I don't have the exact statutory language in front of me. And if, if, if you're, you know, to the extent there would be a difference, there is certainly a different, different language in that statute. I mean, it's a different, different terms. So, you know, I, I could see circumstances under which there would be an argument that perhaps is more expansive availability. But that's not what we're arguing in this case. Because there simply is no need to develop these additional issues. The, the law is, is extremely clear. And, and opposing counsel, Hallam does not address the wealth of authority showing in the treatises, the case law that there was no res requirement, no specific property requirement for profit-based remedies at equity. And this is no coincidence. It's inherent to the nature of the remedy. Tracing isn't simply this freestanding requirement where, you know, you may have to trace it or not in a case. It, it conceptually ties to the basis of the equitable relief. In cases where someone is seeking restitution of property that they own, of course, you have to show that the property is there to get it back. And by the way, that comes with advantages. It's not simply the burden of tracing. You then get priority over general, general creditors. And you also get profits on profits. The example here would be if Hallam took the $2 million and then invested it, if tracing were somehow, if we were claiming that property belonged to the commission and we were tracing it and saying that specific property. If we were to show that, then we would get any money he invested, he gained investing that $2 million. And we get priority over general creditors. And that doesn't happen in disgorgement cases. The commission gets its disgorgement judgment and, and, and is treated like a general creditor. So it's simply a distinct category of relief, profit-based remedies. And in Lieu, the court held that this is tethered, tethered to the unjust gains by a defendant from wrongdoing. That's always been a claim for disgorgement that is satisfied from general assets, not specific property. So the concept of tracing really is inherent to a category of equitable relief that isn't here. Opposing counsel in Hallam doesn't address any of that. The accounting for profits remedy, which the court in Lieu said was highly, highly similar to disgorgement, doesn't address in his brief. We show that accounting for profits at equity did not involve a specific array of tracing. And in the reply brief, he responds that, well, those are cases that are different because they required a fiduciary. In Lieu, the court expressly rejected that argument, saying in accounting, in these, in such remedies at equity, there was no requirement that it be for a fiduciary and cited the Root case, which was an accounting for profits case that said there was no fiduciary requirement for accounting for profits. So the only distinction that opposing counsel raises is it doesn't exist. So there really is no response to the idea that profit-based remedies have always been of the nature that they were awarded here. And that's no coincidence. This court has always based the disgorgement remedy in the idea of this is a remedy to take the unjust gains that a wrongdoer gets. Going back to the Blatt case, if this court reads that analysis, it's very similar to what the court in Lieu just held in terms of the nature of the remedy. And all of the— Let me understand the relevance of the consent order or the consent agreement. Yes, sir. So suppose the consent agreement said, I, Defendant Hallam, hereby consent that the court can order disgorgement of ill-gotten gains without a res. So just imagine that's what it says. Obviously, it's missing that last little clause, but imagine it says it. And then Congress steps in after Lieu, and they pass a late-night amendment to the NDAA, and they say in SEC enforcement actions under the 33 Act and the 34 Act, disgorgement is only available if you can trace to a res. Does the result change, or do you just—is the commission's position that the consent agreement, right, the defendant has consented and given the district court the ability to do this, and so the district court doesn't need the statutory authorization because it has the defendant's agreement? Well, yes, Your Honor. I think the consent decree does govern in these circumstances unless the parties move and present it to the district court that it should be reopened for whatever reason. There are standards for that under Rule 60b-5, Rule 60b-6. Those standards exist for a reason. Opposing counsel says that it's not significant that they didn't actually seek to reopen the consent judgment. But what they're trying to do is be released from the obligations they took on to pay disgorgement, prejudgment, interest, et cetera, while holding the commission to its obligation and its commitment not to pursue its claims, other claims, perhaps broader claims. The commission gave up its right to pursue its causes of actions against Hallam. And in return, the commission—Hallam agreed to give these things in return. So that then gives rise to, I think, two additional complexities. One is that I'm struck by the commission's brief in this case is all about Lew and the statutes, not about the consent agreement, right? So as if the consent agreement—I mean, obviously you talk about it in the procedural history, but it's not that the defendant has given the district court the power to order these remedies, and therefore why are we talking about what Congress did in 1933 and 1934 as amended? Point one. And then point two is to something that Judge Elrod asked earlier, which is whether and to what extent parties are allowed to come in by agreement to give a district court powers that the court may or may not have had pursuant to statutes passed by Congress. We don't have any briefing on that second question. Right, right. Well, with respect to the first question, the commission did rely heavily on the consent agreement for the prejudgment interest argument. That was explicitly in the terms under which it was awarded the IRS rate and the other remedies. With respect to disgorgement, the available disgorgement is absolutely agreed to by Hallam. I understood Hallam's argument to be more about the calculation that disgorgement could be available if it were—but it has to be calculated in a certain fashion. And, sure, the calculation thereof was something that was left for the district court to do. Hallam's argument seems to be much broader than that, that simply disgorgement doesn't exist. And to that extent, I think that the consent agreement certainly dispenses with any such argument. But even if it didn't, it's just that the law is so overwhelming that his arguments simply don't hold muster under lieu. Does the government have a position about what would happen if the consent agreement gave the district court or purported to give the district court the power to order a remedy that Congress had not given the SEC to seek? Well, it's an interesting question, Your Honor. I think it would be determined—there would be a few things that would be considerations there. First would be, frankly, waiver. It may be that there's an argument as to whether a court can or cannot award certain remedies or do something. But a defendant can waive those arguments, and they're simply not presented in the case. And it may be that in those cases, a court may later determine that, yeah, that wasn't available. It simply was waived and not raised. So there are those such circumstances in which this is not presented as to whether or not the court has the power to award something. So I think that would be the first thing that would occur to me, that when these agreements are struck, both sides are giving up something. And part of that is it's not presented to the court for resolution at that time because the parties agree on each side for what they're exchanging. But if there were a circumstance where a consent agreement were to somehow include something that is grossly beyond comprehension in terms of what's available, there are means to raise those arguments. And the first level would be that Hallam would have filed a motion at the district court level saying, wait a minute. It's very clear now that there's no power to do this. Let's reopen the consent judgment. I want to be out of it. And, yeah, the commission can be out of its obligations too and now proceed with this cause of action against me. And both sides would be released from their bargain if there were to be the legal basis for reopening the consent judgment, which, of course, we point out doesn't exist here. But that didn't happen here. So there's sort of several layers of waiver and sort of decision to proceed based on this set of assumptions and legal basis. So in this case, all of those arguments, none of them are really presented before this court properly. Counsel, can you discuss the injunction? Does 78 U.D. 1 allow for this injunction? Yes, Your Honor. It provides that upon showing, and this is with cases that have been interpreted in this circuit, upon showing a reasonable likelihood that the defendant will violate the securities laws in the future, the district court can enter an injunction prohibiting certain acts and practices. And here, of course, a strong basis for that decision was the fact that in 2018, the Texas State Securities Board issued a cease and desist against Hallam for another securities offering in which he was alleged to be committing fraud. So that analysis, of course, isn't challenged by the other side. They don't even grapple with the statute that authorizes this. They seem to be arguing in the reply brief that it simply – the statute doesn't mean what it says. And it can't go beyond – it can't enjoin – the injunction can't enjoin practices like this, securities offering, participation in securities offering. But that's not the case. This circuit in 1981 in SEC v. First Financial Group, under the same provisions, authorized a similar injunction against future participation in securities offerings. So there's really no authority supporting Hallam's position on this. There's authority, to the contrary, expressly authorizing such injunctions in circumstances like this. And again, it's not – it's not a close case where – because you have this 2018 cease and desist order by the Texas State Security Board and Hallam doesn't even address the substance of the injunction. Thank you. All right, thank you, Mr. Wyman. Mr. McCullough, you saved time for rebuttal. As a quick note, the State Securities Board complaint was subsequently dismissed. We were prejudiced, so there was no case there. Thank you. So, counsel says that there's no res requirement in lieu. There's nothing in lieu that gives rise to a res requirement. And, in fact, there is. In the Jennings case, which is cited – which is discussed in lieu, the court – lieu court relied on Jennings. It's a 1807 Supreme Court decision. And the way that the lieu court described it says, quote, An order requiring restitution could not apply to those who were not in possession of the thing to be restored. It had no power over it. So, you know, the thing – it doesn't say – it doesn't say res, but it says the thing had to be there and you had to have possession or control of it. And so this glib denial that lieu says nothing about a res is just actually factually not true. The statement that there's no requirement of a fiduciary – the Supreme Court has carved out one narrow exception to the res requirement. If you read through all the case law, and especially the Merton's line of cases, and you go to Amara, the one exception that they've carved out, reading pre-fusion equity, is a fiduciary beneficiary case. And in Amara, it was a planned fiduciary, a planned trustee, being sued for a breach by a beneficiary of an ERISA plan. That's the only exception to a res requirement. You can read – you can go through the dusty law books of the English reports, and you go through the treatises, and on and on and on, which we've done. You're not going to find any exceptions, although it does make for some difficult reading. Hallam did file a motion. He filed a motion in the trial – in the district court to stay the remedies litigation pending the decision in the lieu court. So that was all teed up for the trial court. We've got lieu coming up. They're going to decide it in June. I believe it was January preceding the June decision, year before last, when that was – now it's year before last. When that motion was filed, the judge granted the motion, understanding, okay, lieu may change the whole thing. Lieu may take my authority away. It may take – there may be no disgorgement under any circumstances, which was one of – which lacked the main issue in lieu at the time. And then the lieu decision came out. The judge entered an order asking for the parties to brief what the heck they think it means. And so we did that, and the parties briefed what was still available in the wake of lieu. Once we did that, we then – Hallam then awaited the requested hearing, where he would present evidence pursuant to the new rules under lieu. So this isn't some sandbagging after the fact thing. The parties all well understood. The court well understood. Lieu's going to change everything. Rule 54, Rule 60, rules, rules, rules. We didn't do a separate motion, but the court well understood what was going on and that this was – we were taking the position that this changes the court's authority. And the idea, well, wait a second, you should have blown up the whole thing. That didn't come up. Counsel, what is the best case that you have for the idea that we can reach these questions of statutory interpretation in the face of a consent agreement like the one your client filed in 2017? The considerable case law that says that courts cannot enforce consent decrees that contain what have become illegal remedies under subsequent either legislation or case law. Which one in particular? There's a case law that we've cited in the brief. There's a – starting with U.S. v. Swifton Company where the court held that it was inherent in the jurisdiction of chancery that an injunction, even though entered by consent, could – has to be treated as a – not as a contract. It's a judicial act. And, therefore, the – that's case number one that started this line of cases that provides that such a system federation number 91, Supreme Court case number 61, where the court – U.S. Supreme Court said it was an abuse of discretion not to change a consent decree that had been undermined by subsequent law. The court said the parties cannot, by giving each other consideration, purchase from a court of equity a continuing injunction because a court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce. And there's subsequent cases, including here in this court, holding to the same effect. So this court has plenty of authority to reach that. And, again, I see the light of the last sentence. The res requirement is super clear. The conduct-based injunction is not authorized. They're only authorized to enjoin illegal conduct, not legal conduct. It's – again, these are remedies not authorized by Congress expressly. Therefore, they either rise or fall upon pre-fusion equity, and they don't exist there. And we ask that the court reverse the district court and, in the alternative, find that the district court abuses discretion in denying a hearing and remand for a hearing. All right. Thank you, Mr. Chairman. Thank you, Your Honor. The case is under submission.